Affirmed and Memorandum Opinion filed May 20, 2008








Affirmed and Memorandum Opinion filed May 20, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-01089-CR

____________

 

KEVIN LLOYD DINSMORE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 174th District Court

Harris County, Texas

Trial Court Cause No. 1054831

 



 

M E M O R A N D U M   O P I N I O N

Appellant Kevin Lloyd Dinsmore appeals his conviction for
aggravated sexual assault of a child, claiming (1) ineffective assistance of
counsel, (2) error by the trial court in admitting evidence without proper
predicate under the hearsay business-records exception, (3) reversible error
because the trial court permitted the State to argue matters allegedly outside
of the record in closing argument, and (4) error by the trial court in
admitting extraneous-offense evidence.  We affirm.








I.  Factual and Procedural Background

Appellant knew the complainant, Lucy,[1]
a thirteen-year-old child, because he was friends with Lucy=s older brother. 
Lucy=s mother learned
that appellant had sex with Lucy and reported the abuse.  The sheriff=s office
investigated the matter and referred Lucy to the Children=s Assessment
Center, where she was interviewed on videotape by a forensic interviewer. 

Appellant was charged by indictment with aggravated sexual
assault of a child, to which he pleaded Anot guilty.@  At trial, Lucy
testified that when she was eleven years old, appellant came to her room one
morning and kissed her; appellant was nineteen years old at the time.  Lucy
described how over the next three months, appellant kissed and Amade-out@ with her.  Lucy
testified that just before her twelfth birthday, appellant had sexual
intercourse with her.  According to Lucy, they had sexual intercourse four more
times over the next four months.  Lucy admitted having affectionate feelings
for appellant during this time.  Lucy testified that appellant told her not to
tell anyone about their sexual encounters because he could go to jail, and Lucy
explained that she never told. 

Lucy=s mother testified that appellant often
spent the night at her home as a guest of Lucy=s brother.  Lucy=s mother testified
that on one occasion she saw appellant leaving Lucy=s room early in
the morning.  Lucy=s mother noticed that although Lucy and
appellant used to be friendly with each other, their relationship changed and
the two seemed distant.  The change occurred about the same time that appellant
began dating Pearl, who became appellant=s girlfriend. 
Lucy=s mother testified
that she learned from Lucy=s brother that appellant had sex with
Lucy, and Lucy=s mother reported the abuse to law enforcement. 








Appellant testified and denied having sexual intercourse
with Lucy.  He admitted spending the night at Lucy=s house as a guest
of Lucy=s brother.  He
explained that he learned from Lucy=s brother that
Lucy had a Acrush@ on him.  According to appellant, Lucy
tried to kiss him when Lucy went swimming with Pearl and Lucy=s brother at
appellant=s apartment complex.  After Lucy attempted to kiss
him, appellant asked Pearl to talk to Lucy about the kiss.

Pearl testified on appellant=s behalf.  Pearl
knew Lucy because of appellant=s friendship with Lucy=s brother.  Pearl
testified that on one occasion, Pearl, Lucy, and Lucy=s brother went
swimming together at appellant=s apartment complex.  On that occasion,
Pearl learned from appellant that Lucy had tried to kiss him, and Pearl chided
Lucy.  At trial, Pearl denied having any knowledge that appellant had sexual
intercourse with Lucy, and Pearl denied telling anyone that Lucy had sex with
appellant.  However, Jennifer, a mutual acquaintance of appellant and Lucy=s family,
testified that Pearl told her that appellant had sex with Lucy.  This
information was corroborated by another mutual acquaintance.  Lucy=s brother
testified that Jennifer notified him of appellant=s conduct with
Lucy, and Lucy=s brother, in turn, notified his mother. 

A jury found appellant guilty as charged.  The judge
sentenced him to ten years= confinement.

II.  Issues and Analysis

A.      Did appellant receive
ineffective assistance of counsel when his trial counsel failed to object to
the State=s direct examination of the
investigating detective?

In his third issue, appellant claims he was denied
effective assistance of counsel.  Appellant claims his trial counsel should
have objected to the following exchange during the State=s direct
examination of investigating officer Detective Gilbert, because the detective=s testimony
referred to appellant=s invocation of appellant=s right to
counsel:

[PROSECUTOR]:  Did you try to contact anybody else in this case?

[DETECTIVE]:  Yes.  I tried to contact the defendant and I did make
contact with the defendant.








. . . 

[DETECTIVE]:  I contacted [appellant].  He said he wanted to contact
his attorney and they would be back in contact with me.  That happens all the
time.  I said, that=s fine, but I need to hear from y=all by this date.

[PROSECUTOR]:  Did you hear back from them?

[DETECTIVE]:  No.  I got a voice mail from his attorney stating that at
this time we=re not going to give a statement. 

. . .

[PROSECUTOR]:  So, the defendant never came in and talked to you,
correct?

[DETECTIVE]:  No, ma=am.

[PROSECUTOR]:  He never admitted nor denied, correct?

[DETECTIVE]:  No, ma=am.

Both the
United States and Texas Constitutions guarantee an accused the right to
assistance of counsel.  U.S. Const.
amend. VI; Tex. Const. art. I, ' 10; see Tex. Code Crim. Proc. Ann. art. 1.051
(Vernon 2005).  This right necessarily includes the right to reasonably
effective assistance of counsel.  Strickland v. Washington, 466 U.S.
668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see Ex parte
Gonzales, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997).  To prove ineffective
assistance of counsel, appellant must show that (1) trial counsel=s representation was deficient in
that it fell below an objective standard of reasonableness, based on prevailing
professional norms; and (2) the deficiency prejudiced appellant in that there
is a reasonable probability that the result of the proceeding would have been
different but for trial counsel=s deficient performance.  Strickland, 466 U.S. at 687,
104 S. Ct. at 2064; Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999).  Appellant bears the burden of proving his claims by a preponderance
of the evidence.  Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim. App.
1998).








To succeed on claims of ineffective
assistance of counsel for failure to object, appellant must demonstrate that
the trial court would have erred in overruling the objection if trial counsel
had objected.  See Vaughn v. State,
931 S.W.2d 564, 566 (Tex. Crim. App. 1996).  If the evidence complained of is
admissible, then an appellant cannot show that his trial counsel=s conduct was
ineffective in failing to object to it.  See Oliva v. State, 942 S.W.2d 727, 732 (Tex. App.CHouston [14th Dist.] 1997), pet.
dism=d,
991 S.W.2d 803 (Tex. Crim. App. 1998); Cooper v. State, 707 S.W.2d 686,
689 (Tex. App.CHouston [1st Dist.] 1986, pet. ref=d).  Even if the
evidence would be excluded on some basis, trial counsel may have a sound
strategy in not objecting to the evidence if the evidence does not harm
appellant=s case.  See Stafford v. State, 813 S.W.2d 503,
508 (Tex. Crim. App. 1991).  Finally, even if the evidence is inadmissible and
prejudicial, trial counsel=s failure to object will not result in
reversal of appellant=s conviction unless appellant demonstrates
that the outcome of his trial would have been different had the evidence not
been admitted.  Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App.
2001). 








We first assess whether the evidence was admissible even if
trial counsel had objected.  See Vaughn, 931 S.W.2d at 566.  Appellant claims that the officer=s testimony was an
improper comment on appellant=s invocation of his right to counsel.[2] 
Statements that an accused wants to speak with an attorney are best
characterized as a desire to remain silent rather than a desire for the
assistance of counsel.  See State v. Lee, 15 S.W.3d 921, 923B24 (Tex. Crim.
App. 2000) (making a statement indicating no interest in talking to police and
expressing desire to contact an attorney was not a statement asking for his
attorney; rather, the statement is viewed as an attempt to convey a desire to
remain silent), overruled on other grounds by Ex parte Lewis, 219
S.W.3d 335 (Tex. Crim. App. 2007); see also Combs v. Coyle, 205 F.3d
269, 279 (6th Cir. 2000) (analyzing comment about wanting to Atalk to my lawyer@ as a statement of
pre-arrest silence).  Detective Gilbert=s testimony
related to appellant=s comments made prior to being placed
under arrest or placed in police custody and prior to any charges being filed. 
Pre-arrest silence is a constitutionally permissible area of inquiry, and
admitting such testimony results in no error.  Waldo v. State, 746
S.W.2d 750, 755 (Tex. Crim. App. 1988); see Rosas v. State, 76 S.W.3d
771, 776 (Tex. App.CHouston [1st Dist.] 2002, no pet.); 24 Tex. Jur. 3d Exercise of Rights by
Defendant ' 3312 (2008).  The disputed testimony is admissible
evidence as pre-arrest silence, rather than an impermissible comment on
appellant=s invocation of his right to an attorney.  See
Waldo, 746 S.W.2d at 755; Rosas, 76 S.W.3d at 776.  Because the
evidence in question is admissible, appellant cannot show that his trial
counsel was deficient in failing to object to it.  See Waldo, 746 S.W.2d
at 755; Cooper, 707 S.W.2d at 689.  

Appellant has not shown that his trial counsel=s performance was
deficient. See Stafford, 813 S.W.2d at 508; Green v. State,
191 S.W.3d 888, 895 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d).  Therefore, we
overrule his third issue. 

B.      Did the trial court err in
admitting evidence without proper predicate under the hearsay business-records
exception?








In his first issue, appellant complains that the trial
court erred in permitting records of incoming and outgoing calls and text
messages to Lucy=s cell phone into evidence in violation of
the business-records exception to the hearsay rule.  Specifically, appellant
claims that the State failed to lay the proper predicate for the admission of
such records.  We review a trial court=s decision to
admit or exclude evidence for an abuse of discretion.  Moses v. State,
105 S.W.3d 622, 627 (Tex. Crim. App. 2003); Mozon v. State, 991 S.W.2d
841, 846B47 (Tex. Crim.
App. 1999).  If the trial court=s ruling was within the zone of reasonable
disagreement, we must affirm.  Montgomery v. State, 810 S.W.2d 372, 391
(Tex. Crim. App. 1990) (op. on reh=g). 

Lucy testified that each time she and appellant had sex,
appellant would communicate with her numerous times by cell phone or text
messages to coordinate their meetings.  However, in response to appellant=s cross-examination,
Lucy explained that she had no proof of those communications.  The State
recalled Lucy=s mother and then offered an incomplete phone log of
incoming and outgoing phone calls and text messages on Lucy=s cell phone for
the eight-month period in which the State alleged appellant and Lucy had
maintained a sexual relationship.  Lucy=s mother testified
that the account for Lucy=s cell-phone number was listed in the
mother=s name but that
the phone belonged to Lucy.  Lucy=s mother requested
the phone log from the wireless carrier and received it on the morning of
trial.  She recognized appellant=s cell phone
number as it was listed in the invoice.  The document showed hundreds of phone
calls exchanged between appellant=s cell phone and
Lucy=s cell phone in an
eight-month period.  The log indicated that appellant=s call volume
peaked with as many as twelve or thirteen calls a day near the dates Lucy
testified they had sex.  Though appellant objected that no appropriate
predicate had been laid for admitting the document as a business record, the
trial court overruled his objection.








The predicate for introducing a document under the
business-records exception to the hearsay rule requires proof that (1) the
record was made by or from information transmitted by a person with personal
knowledge of the events or conditions recorded, (2) the record was made at or
near the time of the events or conditions recorded, and (3) the reporting
entity=s ordinary course
of business was to make and keep such records.  See Tex. R. Evid. 803(6).  Presuming
without deciding that the document was offered as a business record and that
the trial court erred in admitting it into evidence without first requiring the
proper predicate be established, any error was harmless.  See Willis v.
State, 785 S.W.2d 378, 383 (Tex. Crim. App. 1989).  The same facts were
established by other, admissible evidence introduced without objection.  See
id.  

The record reflects that Lucy testified without objection
that she had numerous phone communications with appellant.  Because the records
established the same information that Lucy already disclosed in her testimony
without appellant=s objection, the mother=s testimony about
the phone records was cumulative.  Any error in admitting the phone records was
thus harmless.  See id. 

Additionally, the record contains ample evidence to
establish beyond a reasonable doubt that appellant committed aggravated sexual
assault, and neither appellant=s conviction nor his punishment was in
anyway dependant upon the disputed phone records.  See Anderson v. State,
717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (deeming harmless any error in
admitting evidence when Aother evidence of defendant=s guilt is
overwhelming[] [and] independent of the erroneously admitted evidence@); see also
White v. State, 630 S.W.2d 900, 904 (Tex. App.CAmarillo 1982,
pet. ref=d).  Because Lucy=s testimony and
other evidence in the record was sufficient in itself to support appellant=s conviction, the
admission of the phone log does not constitute reversible error.  See
Anderson, 717 S.W.2d at 628; White, 630 S.W.2d at 904.  We overrule
appellant=s first issue.

C.      Did the
trial court err in admitting extraneous-offense evidence?

In his fourth issue, appellant complains the trial court
erred in admitting extraneous-offense evidence that one year before the charged
offense appellant had sexual intercourse with a thirteen-year-old girl. 
Specifically, appellant complains that the extraneous-offense evidence was
admitted in violation of Texas Rules of Evidence 403 and 404(b).  A trial court=s ruling on the
admissibility of evidence is reviewed under an abuse-of-discretion standard.  Moses,
105 S.W.3d at 627.  If the trial court=s ruling was
within the zone of reasonable disagreement, there is no abuse of discretion.  Id.









Outside the jury=s presence, the
State indicated that extraneous-offense evidence may be admissible to rebut a
defensive theory of retaliation.  The trial court ruled that the
extraneous-offense testimony may be admitted over appellant=s Rule 403
objection.  The State then offered testimony from Penny[3]
that when Penny was thirteen years old and appellant was nineteen years old,
they had sexual intercourse on at least eight occasions.  Penny testified that
appellant may not have known her age when they began having sex, but when Penny
told appellant her true age, appellant continued having sexual intercourse with
her anyway.

Appellant=s claim, that Penny=s testimony was Adamning character
evidence@ offered in
violation of Rule 404(b), is waived because he failed to preserve the complaint
for review.  See Tex. R. App. P.
33.1(a)(1)(A) (requiring a trial court objection to comport with objection on
appeal); Camacho v. State, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993). 
Appellant=s objection at trial must comport with the complaint
he raises on appeal.  See Wilson v. State, 71 S.W.3d 346, 349 (Tex.
Crim. App. 2002); Lopez v. State, 200 S.W.3d 246, 251 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d).  Though appellant objected at trial to
Penny=s testimony under
Rule 403, he failed to voice an objection under Rule 404(b) and, therefore,
waived this argument.  See Tex.
R. App. P. 33.1(a)(1)(A) (requiring a trial court objection to comport
with objection on appeal); Wilson, 71 S.W.3d at 349; Lopez, 200
S.W.3d at 251. 








Under appellant=s Rule 403 claim,
even if relevant evidence is offered and admitted, a trial court nonetheless
should exclude it from evidence if the probative value of the evidence is
substantially outweighed by the danger of unfair prejudice.  Tex. R. Evid. 403; Moses, 105
S.W.3d at 626; Montgomery, 810 S.W.2d at 387.  Courts should balance the
following factors under a Rule 403 analysis:  (1) the strength of the evidence
in making a fact more or less probable, (2) the potential of the
extraneous-offense evidence to impress the jury in some irrational but
indelible way, (3) the amount of time the proponent needed to develop the
evidence, and (4) the strength of the proponent=s need for this
evidence to prove a fact of consequence.  Mozon, 991 S.W.2d at 847. 
When, as in this case, the record is silent as to the trial court=s balancing of
these factors, we presume that the trial court conducted the balancing test.  See
Williams v. State, 958 S.W.2d 186, 195B96 (Tex. Crim.
App. 1997).

Though Penny=s testimony is
prejudicial, the first of the balancing factors, the strength of the evidence
to make a fact of consequence more or less probable, weighs in favor of
admissibility.  Penny=s testimony was probative to rebut
appellant=s purported defensive theory that Lucy fabricated the
allegations to retaliate against him for not returning her affectionate
feelings.  See Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim. App.
2002).  Penny=s extraneous-offense testimony regarding appellant=s sexual
relationship with her, a thirteen-year-old girl, only one year earlier makes it
less likely that Lucy=s allegations are the result of
retaliation or fabrication.

As to the second and third factors, though danger lurks in
impressing the jury in an indelible way and Penny=s testimony is
undecidedly prejudicial and carries some emotional weight, any unfair prejudice
is not outweighed by the probative value.  See Dennis v. State,
178 S.W.3d 172, 181 (Tex. App.CHouston [1st Dist.] 2005, pet. ref=d).  The
State spent minimal time developing Penny=s testimony, and
it was neither lengthy nor graphic; the jury is not likely to have been
impressed in some irrational or indelible way.  See id.  Therefore, the
second and third factors weigh in favor of admissibility.








The fourth factor, requiring balancing of the State=s need for such
extraneous-offense evidence, is significant.  Lucy did not tell anyone about
her allegations until Lucy=s mother confronted her almost six months
later; there was no physical evidence, and no other witnesses could support
Lucy=s testimony.  The
State demonstrated the need for Penny=s testimony
because only Lucy=s testimony established the charged
offense and her testimony was contradicted by appellant and Pearl.  Because
appellant strongly contested Lucy=s allegations, the
State demonstrated the need to counter appellant=s theory that Lucy
fabricated the allegations in order to retaliate against appellant for not
returning her amorous feelings.  See id.  As such, this factor weighs
heavily in favor of admissibility.

A trial court=s 403 ruling
admitting extraneous-offense evidence must be upheld so long as it is Awithin the zone of
reasonable disagreement.@  Montgomery, 810 S.W.2d at 391. 
In balancing the above factors, the prejudice from Penny=s
extraneous-offense testimony,  does not outweigh its probative value.  The
trial court=s ruling is within the zone of reasonable
disagreement.  See Williams, 958 S.W.2d at 195B96; Moses,
105 S.W.3d at 626.  Accordingly, we conclude the trial court did not abuse its
discretion under Rule 403 in admitting the extraneous-offense evidence.  See
Moses, 105 S.W.3d at 627.  We overrule appellant=s fourth issue.

D.      Did the trial court
reversibly err in permitting the State to argue matters allegedly outside the
record in its closing argument?

In his second issue, appellant complains the trial court
reversibly erred in permitting the State to argue outside the record.  During
appellant=s closing argument, appellant=s trial counsel
asked the jury to focus on Lucy=s credibility and to consider her story as
told to employees at the Children=s Assessment
Center, when she indicated that she and appellant had sexual intercourse three
to four times and appellant did not ejaculate at those times versus her
testimony at trial, when she indicated appellant ejaculated a fifth time they
had intercourse.  Appellant complains the State, in its own closing argument,
improperly referred to Lucy=s videotaped interview with the forensic
interviewer at the Children=s Assessment Center, which was not in
evidence.  Specifically appellant complains of the following statements made in
the State=s closing argument:

[PROSECUTOR]: Now let=s talk about [Lucy], her testimony.  She=s credible, consistent.  I mean, if the best you can
do is go from the [medical] records and say four versus five times, ejaculation
here.  . . .  But if the best you can do is she is inconsistent, four or five
times, let=s shut the books, get out of here,
that=s a liar.  I mean, that=s not inconsistent.  You know she
did the children[=s] assessment video a year ago
where she=s on videotapeC 








Upon
appellant=s trial counsel=s objection to the
State=s reference to
Lucy=s videotaped
interview, the trial court sustained appellant=s objection.  When
appellant moved for a mistrial, the trial court denied appellant=s motion.  The
State then argued to the jury that the investigating detective testified that
Lucy conducted an interview with a forensic interviewer on videotape.  Appellant=s counsel said, AOutside,@ in reference to
the State=s mention of the detective=s testimony of the
video to which the trial judge said, AOverruled.@  The State next
argued to the jury that had the videotape shown any inconsistencies in Lucy=s account, the
defense attorney would have questioned Lucy about it, but the State indicated
that no inconsistencies existed. 

A proper jury argument must fit in one of four general
areas:  (1) summation of evidence, (2) reasonable deductions from the evidence,
(3) answers to the arguments of opposing counsel, and (4) pleas for law
enforcement.  Cannon v. State, 668 S.W.2d 401, 404 (Tex. Crim. App.
1984).  The test to determine whether an improper argument constitutes reversible
error is whether:  (1) the argument violates a statute, (2) injects a new and
harmful fact into the case, or (3) manifestly and improperly harms or
prejudices the rights of the accused.  Id.

Detective Gilbert testified without any objection that upon
Lucy=s referral to the
Children=s Assessment
Center, a forensic interviewer conducted a videotaped interview with Lucy.  The
State may draw from the facts in evidence all inferences that are reasonable,
fair, legitimate and offered in good faith.  Denison v. State, 651
S.W.2d 754, 761B62 (Tex. Crim. App. 1983).  Attorneys for
the State or for the accused are permitted to discuss evidence that is
reflected in the record.  Id.  Therefore, the State=s reference to the
existence of the videotape during closing argument was proper summation of the
evidence as reflected in the record; no improper references to matters outside
the record were made, and no error exists in such an argument.  See Gaddis
v. State, 753 S.W.2d 396, 400 (Tex. Crim. App. 1988).








Furthermore, the State argued in its closing argument that
appellant=s trial counsel would have questioned Lucy regarding
any inconsistencies in Lucy=s story at the Children=s Assessment
Center and in her testimony at trial.  However, appellant=s trial counsel in
closing argument made the first reference to the substance of Lucy=s videotaped
interview in which Lucy indicated she had sex with appellant three to four
times and appellant did not ejaculate.  Appellant complains the State=s jury argument
made reference to the of the videotape content, the same content appellant=s trial counsel
mentioned in closing argument, as a way of bolstering Lucy=s testimony. 
However, the State=s argument was made in response to
appellant=s trial counsel=s own closing
argument in which he questioned Lucy=s credibility by
alleging inconsistencies between Lucy=s trial testimony
and Lucy=s account in the
videotape.  See Turner v. State, 482 S.W.2d 277, 279 (Tex. Crim. App.
1972); Gonzales v. State, 831 S.W.2d 491, 494 (Tex. App.CHouston [14th
Dist.] 1992, pet. ref=d).  Therefore, as an argument in response
to appellant= trial counsel=s closing argument
alleging inconsistencies in Lucy=s testimony, the
State=s argument is a
proper argument invited by appellant=s trial counsel=s closing
argument.   See Turner, 482 S.W.2d at 279; Gonzales, 831 S.W.2d
at 494.  No reversible error exists.

Even if we were to hold the State=s jury argument
improper, it is nonetheless harmless beyond a reasonable doubt and did not
contribute to the verdict.  See Cantu v. State, 842 S.W.2d 667, 690
(Tex. Crim. App. 1992).  On this record, we conclude that the State=s argument and
reference to the videotape cannot be said to have contributed to the jury=s assessment of
guilt given Lucy=s own, detailed testimony of sexual
intercourse with appellant.  See id.  We overrule appellant=s second issue.

 

 








Having overruled appellant=s four issues on appeal, we affirm
the trial court=s judgment.

 

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed May 20, 2008.

Panel consists of
Justices Fowler, Frost, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 









[1]  The child complainant is identified by the pseudonym
ALucy.@





[2] AIn a criminal
case neither the judge or the attorney representing the state may comment on
the fact that the defendant has contacted or retained an attorney in the case.@  Tex. Code
Crim. Proc. Ann. art.
38.38 (Vernon 2005); State v. Lee, 15 S.W.3d 921, 923B24 (Tex. Crim. App. 2000), overruled on other
grounds, Ex parte Lewis, 219 S.W.3d 335 (Tex. Crim. App. 2007). 
However, a pre-arrest statement that investigating officers should confer with
the accused=s attorney is viewed as invoking the right to
silence.  Lee, 15 S.W.3d at 923B24. 
AAlthough, by statute, an attorney representing the
State may not comment on the fact that a defendant has contacted or retained an
attorney, an argument regarding a defendant=s
pre[-]arrest request for an attorney or silence in response to police questions
may not be improper.@  24 Tex. Jur.
3d Exercise of Rights by Defendant ' 3312 (2008); see Lee, 15 S.W.3d at 923B24; Waldo v. State, 746 S.W.2d 750, 755 (Tex.
Crim. App. 1988); see also Abbring v. State, 882 S.W.2d 914, 915 (Tex.
App.CFort Worth 1994, no pet.).  In this case, appellant
was interviewed by Detective Gilbert before any charges were brought against
him; therefore, Detective Gilbert=s
testimony, as elicited by the State, to appellant=s comment about contacting an attorney in response to Detective Gilbert=s pre-arrest questions is not improper.  See Lee,
15 S.W.3d at 923B24; Waldo, 746 S.W.2d at 755; Abbring,
882 S.W.2d at 915; 24 Tex. Jur. 3d
Exercise of Rights by Defendant '
3312 (2008).





[3]  This child witness is identified by the pseudonym APenny.@